OK. The matter is I'll mispronounce his name. Richard Vizadnik, is that correct? Vizdak. I'm sorry. Vizdak. Vizdak. OK. Thank you. Counsel, are you ready? May it please the Court. My name is Katelyn O'Donnell. I'm a KISS Counsel for Appellant Richard Vizdak. With the Court's permission, I'll request two minutes for rebuttal. OK. Your Honors, that issue is whether the lower court properly understood and applied the shareholder standing rule as a rule of prudential standing. I'll make three points. First... Let me ask this because, you know, we can affirm on any basis as long as it's supported by the record. What is the harm? Because under RICO, if they get statutory standing, you have to show harm as an element of the cause of action. Your client is a borrower. If the client's partnerships and business entities were borrowers... It's the first time I've seen a situation where someone who is a borrower is complaining that interest rates were lowered. Yes, Your Honor. I'm at KISS Counsel to address a particular procedural issue. I'm not addressing the merits of Mr. Vizdak's... OK. Well, help me with the procedural issue. The standing issue, right? Yes, Your Honor. You still have to get to harm to do standing, don't you? Yes, Your Honor. Where's the harm? As the district court found, the harms suffered, the harms alleged, were derivative of the harms suffered by Mr. Vizdak's corporations. And what was the harm that the corporations suffered? Again, I did not brief the merits of this suit, but Mr. Vizdak is alleging that the LIBOR manipulation scheme, upon which his forbearance agreements and his interest rates were determined... That's just, you know, the decision affected the interest rates. But I understand that the interest was lower. Yes, Your Honor. How could there be, following up on Judge McKee's concern, how could there be a harm if interest was lowered so it cost you less to borrow? Well, fundamentally, Your Honor, Amicus's point here is that there may or may not have been a harm, but it wasn't the federal court's place to determine whether or not there was a harm, because the federal court found that Mr. Vizdak did not have prudential standing to pursue his claim in federal court. The court then went on to address the merits of the suit, and that is the issue that Amicus is addressing today. So where did the district court err with respect to prudential standing? Well, our first point, Your Honor, is that the shareholder standing rule is a rule of third party standing and should be considered jurisdictional, as some circuits have held. In the alternative, even if prudential standing is a waivable rule, the district court nevertheless erred in continuing on to reach the merits of the suit. What's your best case for the concept that it's not jurisdictional, that it is jurisdictional? Your Honor, prudential standing, like constitutional standing, is a threshold doctrine addressing the... But what's your best case for the proposition that it is constitutional? Because if it's not constitutional, there's still jurisdiction, and the court can do what it did, right? Well, we would argue that point, but if it is not constitutional, then the court would be finding that it is waivable in certain instances. Okay. So what is the best case to support your argument that it is not waivable? Your Honors, because prudential standing addresses the same concerns about judicial power as constitutional standing generally, the court should find it jurisdictional. Both doctrines fundamentally... I know you want to read this, but listen to the question and answer the question. What is your best case for the proposition that prudential standing, shareholder standing, however you want to refer to it, let's assume for a second it's the same thing, is jurisdictional? Because the doctrine arises from the same policy concerns as constitutional standing generally, and it seeks to limit... Is that a case that you're giving me? A very long case. Because there is a concern versus who? I'm looking for a case to support what you're arguing. Not an argument, a specific case, like an F-third site. Okay. I believe Worth v. Selvin uses language to that extent, saying that prudential standing and constitutional standings are threshold constraints that must be determined in every case. This court has said in the past, in the 2012 case Lewis v. Alexander, that the court has yet to determine whether or not prudential standing is waivable, and the court in that case and in UPS Worldwide forwarding the U.S. Postal Service cited to several Supreme Court cases and Third Circuit cases which used language which would suggest that it may be jurisdictional. You know, you would not agree with the statement that you first in every case have to assure yourself that you have constitutional standing before you do anything else. Yes, Your Honor. Would you agree with that? Yes, Your Honor. All right. But you're focusing on prudential standing rather than constitutional standing, which requires three very basic elements. I need not repeat them. I'm sure you know what they are. Can you satisfy that in this case? The first is an injury. Yes, Your Honor. The parties, as the appellees have agreed, Article III standing is satisfied in this case. The issue is whether the prudential standing doctrine Can you drop prudential standing just for a moment and focus on Article III standing? You agree with me that that comes first? Yes, Your Honor. So how do you satisfy constitutional Article III standing? I believe, Your Honor, that Mr. Vizdech, again, I did not address the merits of the suit. I believe Mr. Vizdech is alleging that the harm suffered was financial. He suffered harms to his business and to his credit rating because of the interest rates that were determined in his forbearance. Even though the interest rates, Judge McKee mentioned before, they were lowered. Yes, Your Honor, that is his argument. But again, the issue that we have to deal with today is whether or not procedurally the district court was correct in waiving its finding that Mr. Vizdech lacked prudential standing and continuing on to the merits of his suit. This was a suit that was raised in state court. But you're conceding and you're saying you both agree there is Article III constitutional standing. The issue is whether or not I never totally understood the distinction, frankly. You're arguing that prudential standing is different in terms of not being jurisdictional. That's what your argument is. Well, we are arguing first. It is jurisdictional. We are arguing first that this court has certainly left itself the option to find prudential standing jurisdictional. But even if the court does not agree with this assessment, even if the court finds that it's waivable, this court has said that prudential standing or prudential requirements should not be lightly cast aside. And that's exactly what happened in this case. Help me understand that. How was it lightly cast aside? In this case, Mr. Vizdech brought his suit in state court and it was removed to federal court by the defendants, who then raised a prudential standing defense. A prudential standing defense, which basically said that Mr. Vizdech should not have his suit heard in federal court. That's how prudential standing functions. The district court agreed that the suit should not be heard in district court. But instead of remanding the suit, they went ahead and addressed the merits and they dismissed the suit with prejudice. We are arguing that this is an error and that the suit should be remanded back down to the state court to determine whether or not the suit is justiciable in state court. So you're ultimately asking us to send it back to where the case started. Yes, Your Honor. Again, this court has acknowledged that federal court should decline to exercise jurisdiction over suits that are non-justiciable. The district court in this case found that Mr. Vizdech's suit was non-justiciable. It provided no countervailing reasons for continuing on to address the merits. Did that court address Article III standing? Yes, Your Honor. Your Honor, there was some conflation of the Article III standing and prudential standing concepts. But the court, as the parties have maintained, Mr. Vizdech does have Article III standing. The court assumed that he had Article III standing and addressed the prudential standing issue. And in its final opinion, really just determines whether or not prudential standing is jurisdictional so that it can continue on to reach the merits of the suit. Are you familiar with Lexmark at all? It's been quite a case. Yes, Your Honor. In Lexmark, the court basically, as I understand it, and let me know if you think I'm wrong, said that as to the three considerations, they have noted the fact, and it's clearly true, that prudential standing and Article III standing were often conflated and confused. They didn't help us sort through this. But then the decision went off on the concept of statutory standing. That was an issue there under the Copyright Act. Yes, Your Honor. Why isn't the similar kind of standing issue here? And that is it's a RICO claim. Part of it's a RICO claim. Part of it's not. But as to the RICO part of it, which is really the crux of it, why wouldn't we look at that in terms of statutory standing and whether or not there is statutory standing? And if we do that, then under Lexmark, why wouldn't the court be empowered to do exactly what it did, reach the merits? Well, Your Honor, I imagine the court could evaluate the RICO claim in that sense. But what the issue here is that Mr. Vizdak is a guarantor on the loans of his corporations. It's a classic third-party standing issue. He is asserting a derivative claim. Does he have an injury separate and apart from the injury his corporation suffered? In this case, the district court found that he suffered no injury separate and apart from the injuries of his corporation. Do you disagree with that? Again, amicus is confining itself to determining whether or not the district court properly assessed and used the third-party standing doctrine. It's kind of like saying you're confining yourself to making potato salad without touching the potatoes. How can you cabinet? I understand you might want to, but how can you cabinet to that extent? That's the crux of standing, isn't it? I think you're correct, Your Honor. But I think that ultimately the procedural issue here needs to be settled first. And then whether the suit is justiciable and whether North Americans should be heard is for the state court. I'm asking you a standing question. That is judicious disability. I'm trying to get at standing. In federal court, as the district court found, Mr. Vizdak does not have third-party standing to proceed because he is asserting claims that are derivative of the claims of his corporation. Didn't the district court originally find that there was no Article III standing? The district court, the report and recommendation suggested that the case be dismissed because of prudential standing. The court adopted that report and recommendation and then dismissed the case with prejudice. Mr. Vizdak made a motion to alter or amend judgment saying that you cannot dismiss a suit with prejudice on standing grounds. And in that opinion, the district court conflates Article III and prudential standing and says that it must remand the suit. But the court never found. The court at one point, and I'm reading from the opinion, when we remanded this case to state court, we did so based on our determination the plaintiff lacked Article III standing. So at some point, the district court came to the conclusion it didn't even have Article III standing. In the opinion that we're considering now, is there any discussion of Article III standing? Your Honor, I agree that it's quite confusing. But what appears to happen is that the district court finds that the district court adopting the magistrate's report and recommendation was adopted on the basis that he, that Mr. Vizdak lacked prudential standing. And then the district court does appear to conflate Article III standing and prudential standing, but no party in this case is arguing that Mr. Vizdak doesn't have Article III standing. I'm curious because we have to satisfy ourselves that there's Article III standing. Yes. And I go back to Judge Fuentes' and Judge McKee's questions about the injury. Of course. So can you help me out? Do we have Article III standing here? I believe amicus does believe that you have Article III standing to consider this case. Let's go back to the potato salad deal. What's the injury? I believe it's the injuries that Mr. Vizdak has suffered to his businesses. But you said a little while ago he hasn't suffered any suffering apart from the injuries his corporations have suffered. Those are the injuries alleged by Mr. Vizdak. Again, the district court found that he did not suffer any injuries separate from his businesses. But, again, the causation element of Article III standing can be met even if the causation is tended, even if your claims are derivative. It does not mean that you haven't met Article III. Okay. Well, I'm not sure how causation falls into it. I'm trying to focus on his injury apart from his corporation's injury, what his individual injury is for purposes of Article III standing and prudential standing for that matter. What injury did he suffer? His corporation did not suffer. Your Honor, I see that I'm out of time. I'll continue and answer your questions. Go ahead. Mr. Vizdak, in his complaint, alleges injuries to his credit rating. His or his corporation's? His personal credit rating due to the LIWR manipulation upon which his forbearance agreements were premised. Did he sign the forbearance agreement or did the corporation sign it? He signed the forbearance agreement as the general partner of the corporation. Okay. Okay. Thank you very much. You still have time, I think. I do, Your Honor. Thank you. Good morning, and may it please the Court. I'm Jamie Dicus from WilmerHale for Appalese. I think the Court seems to be focusing on a critical issue here and one that's, we think, fatal to Mr. Vizdak's claim. Are you conceding Article III standing? I think, to Your Honor's point, it's not up to us, but we do not dispute that Mr. Vizdak sufficiently elects Article III standing. That surprises me. Why wouldn't? Go ahead. So you do acknowledge an injury? We do. We do acknowledge and, in fact, we briefed in our supplemental, first supplemental briefings. What's the injury specific to the plaintiff? We think that the injury that Mr. Vizdak has alleged here is the injury to his credit. In paragraph 34 of his amended complaint, he contends that defendants, Appalese, besmirched his credit rating and his business reputation by raiding several of his corporate and trust accounts. We think that that alleged injury is sufficiently his own to satisfy the Article III requirement, though, as amicus has acknowledged, that is a derivative injury of the alleged injury to the company, which, as the court, I think, has correctly observed, is very hard to understand, given that it's based on his allegation of a conspiracy to suppress LIBOR, which was the basis for the interest that the companies paid. Supposing we disagree that that's not an injury under Article III? If the court concludes that there is no Article III standing, then we have a different outcome. And that was, as I think the court is suggesting, that may have been the district court's view at one time, or that may have been incorporated into its thinking about the case. But as the history that amicus just recited correctly shows, the district judge also understood that this was, in fact, an issue of shareholder standing, of third-party standing, not Article III standing. But what would happen, you say there would be a different outcome. Would the case go back to the district court or the state court, or the district court descended to the state court? That is, I think, that I think would be. It still has a RICO case. I'm sorry, Your Honor. Yes, I think that would be the outcome. If there is no Article III standing, then there is no subject matter jurisdiction in the district court, Section 1447 of Title 28. And the state court can hear RICO claims. Would require remand. And the state court could hear the RICO claim. But I want to emphasize, I don't think that's our situation at all. I think he has alleged an injury directly to himself, and I think that's sufficient to support the district court's jurisdiction. An injury based on negative credit reports. An injury based on negative credit reporting. That actually has occurred. Or is that a potential injury? That's his allegation, Your Honor. Well, you don't know if it's a real injury or if it's an injury in fact or it's a potential injury. I don't know the status of his credit. I mean, Reagan can say anything. It's just a question of whether it's an injury in fact. It's his allegation, and we think the allegation is enough. Okay. But again, it's derivative. I was injured. I hurt my arm. That's an injury. Are you going to accept that, or are you going to accept something that is more credible or substantiated, let's say? I understand, Your Honor. You're not looking to have this case go back to state court, right? You're happy with the result you got in the district court. We're not looking for it to go back to state court. In fact, we don't think there is a basis for remand to state court. I'm going to suggest that there's some discretionary calculus that's at work here. We think that's incorrect. The district court properly had an exercise subject matter jurisdiction here, so the second sentence of 28 U.S.C. 1447 doesn't apply. If there were any other basis for remand, the first sentence of 28 U.S.C. 1447C required it to be erased in the first 30 days after removal, which it was not. So there's no other basis to remove the case. The only reason why there – To remove or remand? Excuse me, to remand it. The only reason why you could imagine that the case could be remanded is if there were no longer any ground for federal jurisdiction, if federal jurisdiction were somehow destroyed. But there's – that hasn't occurred here. Not only does he have his federal RICO claim, which supports jurisdiction under Section 1331, but we also removed under the EDGE Act because the case involves international – Does that strike you in a thing? Ms. O'Donnell was getting some of this. Just viscerally, does it strike you as somewhat unfair that he brings an action in state court? You go into state court and go, uh-uh, no, no, no, this one's in federal court. Actually, we're in federal court and argue that. Case goes into federal court and you stand up and go, no, no, no federal cause of action. So I think that Your Honor's question goes to something that Amicus has said in this case that's not quite right, which is that we have contended in the district court that federal court is not the correct forum for this case. That's not our contention at all. We think federal court is exactly the right place for this case to be heard. We think we had two legitimate grounds to remove it. But you're challenging his standing to argue it in federal court. I'm sorry, Your Honor. But you're challenging his standing to argue it in federal court? We are challenging – we are challenging his ability to pursue these claims under the shareholder standing rule, which is a defect in – In federal court. I'm sorry, Your Honor. So you're saying – you're not arguing that he shouldn't be in federal court. You're just saying that the federal court has no business hearing the case in order to threaten to hear the case. That's what you just said to me. We – no, that's not what I meant to say, Your Honor. Okay. What I meant to say is we think that the federal court had the power to hear his claims and to decide his claims. We don't think he has the power to pursue these claims. That's what the shareholder standing rule says. That's what third-party standing is about. Well, he doesn't have the power to pursue the claims. How does the federal court have jurisdiction to hear the claims? So I think – Or the injury? I think the question goes to the second supplemental issue that we were invited to brief. The reason the answer to Your Honor's question is that the district court did have jurisdiction to consider the merits of his claims, even though he was not the proper plaintiff to assert these claims under the shareholder standing rule, is that that defect, that prudential standing problem or third-party standing problem, is not a defect in the subject matter jurisdiction of the district court. It is a defect that a federal court may move past and reach the merits. We know this because this court has done that repeatedly. You're saying that because you assume that the – or your argument is that the district court had Article III standing. It had Article III. Yes, Your Honor. It was established before the district court. Yes, Your Honor. The district court had Article III standing. If it had not, then we would not dispute that it was wrong to reach the merits. But it had Article III standing. The problem was that there was – The basis was the litigant's credit rating might – was affected by the problem with the LIBOR interest rates. I think that's the primary issue – excuse me, that's the primary alleged injury. Do you know offhand what paragraph of the complaint he alleged that in? I'm sorry? Do you know offhand what paragraph – I'm going to ask Ms. O'Donnell. Maybe she can look for it. Yes, Your Honor. Is there a paragraph in the complaint that's alleged that specific injury? Yes, Your Honor. The allegation that I quoted a moment ago is in paragraph 34 of the amended complaint, and he also alleges in paragraph, I believe it's 40 of the amended complaint, that he was referred to third-party collection agencies. So that's another – Paragraph 34, you said? Paragraph 34, Your Honor, is the allegation that his credit rating and business reputation were besmirched. I think those were actually two distinct alleged injuries. And then in paragraph 40, he alleges that he was – he alleges a referral to credit agencies. But if I could return to something that we were talking about a moment ago, I think, Judge Quintus, to your question, if Article III standing were absent, we would not dispute that it was improper to reach the merits. What we're dealing with here is something different. What we're dealing with here is an absence of third-party standing under the shareholder standing rule. We think this Court's own decisions are clear that – But what's the shareholder standing rule? If you're a shareholder, you have standing to sue on behalf of the corporation? The shareholder standing rule, as it applies here, is that ordinarily, as a shareholder, you don't have standing to pursue injuries of the corporation. You have to instead institute a derivative action. The corporation is the proper living. The corporation is the proper living. You could do that under certain limited circumstances, like if you had a direct injury of your own that you could allege, rather than a derivative injury, as we have here, as Amicus has agreed. But, again, as this Court has shown by its own decisions, for him to bypass that problem and reach the merits is permissible because the third-party standing that Mr. Hizdak had is not a subject matter jurisdiction problem. It's a problem for Mr. Hizdak, but it doesn't mean that the district court didn't have jurisdiction to reach the merits and decide the case. What's your best case for this proposition that Article III standing is jurisdictional, but that within that umbrella, the requirements of prudential standing must still be satisfied? I think probably the best cases to look at are this Court's own decisions in interactive media and in Elkin v. Falver and in Emory v. Forge, all of which are cited in our reading. Okay. So your best option is to keep the case in the district court and have the district court dispose of the case? Is that right? Our request to Your Honor is... The jurisdiction has been established. Did you get to the merits of the case? Yes, Your Honor. Our request to Your Honor is to affirm the decision of the district court to hold that Judge Cohill correctly bypassed this third-party standing issue, which, as your own decisions show, is not one that prevents him from reaching the merits, that he correctly reached the merits, and having done so, that he correctly identified fatal defects in the complaint requiring dismissal. All right. To affirm the merits of the case is determined by the district court? Yes, Your Honor. Thank you, Your Honors. Your Honors, I'll make two points on rebuttal. First, I would like to say that if the court does find that Mr. Bissac does not have Article III standing, the proper course would be to remand the suit to state court.  And then dismiss the suit on prudential standing reasons. I would like to say that whether a court has the power to assert jurisdiction does not mean that it should assert jurisdiction. The Supreme Court has said that we have an unflagging obligation to assert our jurisdiction. Yes, Your Honor. Not in this context, but the court has said that. Yes, Your Honor, and the Supreme Court has also developed a series of doctrinal exemptions to asserting federal jurisdiction. Abstention, mootness, prudential standing. These are doctrines that serve a purpose. They're threshold doctrines. And a court should not merely waive a decision on prudential standing decision to address the merits merely because it has the power to do so. That is what the court did in this case, and that was the improper course. The case should have been remanded. And the court could have remanded under 1447C. That's a statute that just addresses procedural defects in the remand process. It does not address the court's ability to refuse jurisdiction in its own discretion. I'm looking for the complaint that's apparently not attached to the appendix. Is the complaint attached to the records somewhere? Yes, Your Honor. The original complaint and the amended complaint. The amended complaint appears at AA125. AA125? Yes, of amicus's appendix. Okay. It's attached to your brief? Yes. Okay, thanks. I was going to need appendix one. Thanks. Thank you so much, Your Honor. Thank you. Thank you. We'll take that under advisement.